## Connery *versus* Brooke.

1. Hatcher being owner of two lots used a lane from the back lot over the other to a turnpike with a gate there. In 1858 he conveyed the back lot, the gate remaining, " with the free use, right and privilege of a passage-way * * * extending from the * * * turnpike to the hereby granted premises with free ingress and regress at all times for ever." Through divers conveyances, all reciting the grant of the passage, Brooke became the owner of the back lot in 1867, and Connery of the front lot in 1869 ; the gate had been used in common by the owners of both lots till 1870, when Brooke took it down and Connery put it up. In an action against Connery for obstructing the passage : *Held*, that the grant of the privilege did not *per se* make the gate a wrongful obstruction ; it was a question for the jury in connection with the circumstances.

2. If the gate was not a practical hindrance and an unreasonable obstruction to plaintiff's use of the passage, it was not illegal.

3. Generally a grant is to be taken in its natural and ordinary sense; and if there be doubt, most strongly against the grantor.

4. A grant is to receive a reasonable construction which will accord with the intention of the parties, and the court must look at all the circumstances under which it was made.

5. *Contemporanea expositio est optima et fortissima in lege*, applied.

6. The plaintiff took down the gate, defendant sued him in trespass before an alderman and obtained judgment against him. *Held*, not to be a bar to an action for the obstruction.

7. Cox *v.* Freedley, 9 Casey 124, recognised.

January 14th 1873. Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia :* No. 61, to July Term 1870.

This was an action on the case brought September 17th 1869, by George G. Brooke against Lawrence Connery for obstructing a passage-way of the plaintiff. The defendant owned a lot fronting on the Bustleton and Somerton turnpike road ; the plaintiff owned a lot directly back of it and adjoining it. Both lots had belonged to John Hatcher in 1856, and were separated from his neighbor, Wendle, by a fence, along which was a lane from the lot now the plaintiff's to the turnpike ; there was no fence on the side of the lane next Hatcher's own land. Whilst Hatcher owned both lots he put a gate at the end of the lane on the turnpike. On the 26th of February 1858, the gate still being at the end of the lane, Hatcher conveyed the rear lot (plaintiff's) to C. C. Vandegrift, " together with the free use, right and privilege of a passage-way, ten feet in width, along Wendle's line, extending from the Bustleton and Somerton turnpike to the hereby granted premises, with free ingress and regress at all times hereafter for ever."

On the 14th of June 1862, the Vandegrift lot was sold by the sheriff and conveyed to David Saul ; the sheriff's deed contained the clause in relation to the lane which was in the deed to Vandegrift. Through various conveyances the plaintiff became the

owner of the lot March 25th 1867, all the deeds containing a grant of the privilege as in Hatcher's deed to Vandegrift; the gate continued at the turnpike up to the time of the plaintiff's purchase. Hatcher and his estate owned the lot on the turnpike until March 27th 1869, when it was sold by his administrator under an order of the Orphans' Court, to the defendant. Vandegrift and Hatcher and the plaintiff and Hatcher had used the gate in common. About March 1870, plaintiff took the gate down and it so continued about ten months; the defendant then put it up. He also brought suit on the 2d of April 1869, before an alderman against the plaintiff here, " in a plea of trespass in damage to real estate;" on the 8th of April, the return-day, Connery appeared before the alderman, Brooks not appearing, and claimed " five dollars and twenty-five cents in trespass for damages done by defendant to plaintiff's real estate in tearing down and breaking plaintiff's gate;" judgment was rendered for Connery on the same day for $5.25: after the issuing of an execution, the amount of the judgment was paid by Brooks and received by Connery.

The cause of action in this case was the erection of the gate by the defendant at the turnpike end of passage.

The court directed a verdict for the plaintiff, reserving these points :—

1. Whether or not the putting up of the gate by the defendant was an obstruction to the plaintiff's " free use, right and privilege of a passage-way ten feet wide along Wendell's line."

2. Whether the judgment obtained by the defendant against the plaintiff before Alderman Joseph H. Comly, barred the plaintiff from recovery in the present action.

The jury found for the plaintiff.

The court in banc afterwards entered judgment for the plaintiff on the verdict on the reserved points, Hare, P. J., delivering the following opinion :—

" The plaintiff is the owner and occupier of a messuage in the neighborhood of Philadelphia. It stands back from the road, and the only access to it is through the defendant's land. Both parties claim under John Hatcher, who was the owner of a tract of land near the Second Street turnpike. In the year 1858, J. Hatcher sold and conveyed the premises to Vandegrift, with the free use, right and privilege of a passage-way ten feet in width, through the land of the grantor, extending from the house to the turnpike. An execution was subsequently issued against Vandegrift, and his title came through divers mesne conveyances to the plaintiff. It appeared from the evidence given at the trial, that the way which had been laid out when Vandegrift went into possession in accordance with the provisions of the deed, was closed by a gate at the point where it led into the turnpike. This was presumably done with his consent, and remained without objection until the title vested

. 23 P. F. SMITH—6

[*Connery v. Brooke.*]

in the plaintiff. The gate was then taken down by him and put up again by the defendant. The plaintiff then brought suit to recover for the alleged obstruction of the right of way.

"The question may be considered as arising solely on the deed, or on the deed in connection with the parol evidence. The words of a grant are to be taken as strongly against the grantor as their natural import warrants. By the 'free use, right and privilege of a passage-way,' we can only understand a way unimpeded by any means whatever. If the plaintiff can erect one gate he may put up another, or close the access to the road by movable bars. It has been said that some precaution of the kind was requisite to prevent cattle from trespassing on the lot through which the way passed. If the gate was the only means of effecting this object it does not follow that it could be used. But there are other methods which might have been resorted to, as for instance, a fence separating the lane from the field. That this would be more expensive and less convenient than a gate, is no reason for detracting from the words of the grant. The question is not one of good neighborhood, but of legal right.

"We are also clear, that the deed is not varied by the parol evidence. When the ambiguity is latent, and results from the application of the instrument to the matter in hand, the contemporaneous acts and declarations of the parties may sometimes be taken into view in arriving at a conclusion. Such evidence, however, has never been thought admissible when the question is what was intended, and not to what the intention applies. This is peculiarly true when the words are clear, and admit grammatically of but one construction. That Vandegrift suffered the gate to be erected and allowed it to remain without objection would not have precluded him from requiring it to be taken down unless the adverse use had continued for twenty-one years, and the plaintiff cannot be in a worse position than the persons under whom he claims. It was at the most an admission, which, if made in terms, would not have controlled the construction of the deed: Hamilton *v.* Neel, 7 Watts 517, 520; The Boston Hat Co. *v.* Messinger, 2 Pick. 223; The Bank *v.* McFarland, 5 Hill 432, 436.

"On the remaining question, whether the plaintiff is precluded by a judgment in a former suit growing out of the same matter, although not for the same act, before a justice of the peace, it is enough to say, that a magistrate can have no jurisdiction by consent or otherwise, to determine the title to land."

The defendant took out a writ of error and assigned for error, the entering of judgment for plaintiff on the reserved points.

*W. Hopple,* for plaintiff in error.—The plaintiff being the owner of the land subject to the right of way had the right to protect his land by a gate: Maxwell *v.* McAtee, 9 B. Monroe 20;

[Connery v. Brooke.]

Capus v. Wilson, 3 McCord 170; Houpes v. Alderson, 22 Iowa 160: and could exercise all the rights of ownership not inconsistent with the easement: 3 Kent's Com. 420; Washburn on Easements 188, 195; Senhouse v. Christian, 1 T. R. 560; Robbins v. Borman, 1 Pick. 122; Adams v. Emerson, 6 Id. 57; O'Linda v. Lothrop, 21 Id. 297; Atkins v. Bordman, 2 Metcalf 467; Chandler v. Goodrich, 9 Shep. 78; Jackson v. Allen, 3 Cowen 220; Underwood v. Carney, 1 Cush. 292. What is such a use must be decided by a jury. Vandegrift took title while the gate was standing, and used it several years in common with Hatcher; the court in construing the deed, will look at the circumstances under which it was made: Johnson v. Kinnicutt, 2 Cush. 152; Atkens v. Bordman, 2 Metcalf 464; Cox v. Freedley, 9 Casey 124; Gloninger v. Franklin Coal Co., 5 P. F. Smith 9. The defendant having had notice of the erection and consent by Vandegrift, is bound by such consent or condition of things at the time he purchased: Campbell v. McCoy, 7 Casey 263; Lacy v. Arnett, 9 Id. 169; Hagey v. Detweiler, 11 Id. 409; Erb v. Erb, 14 Wright 388; Arnold v. Cornman, Id. 361. These matters were for the jury, as well as whether the gate was an obstruction and an interferance with plaintiff's right of way: Johnson v. Kinnicutt, 2 Cush. 153; Houpes v. Alderson, 22 Iowa 160; Kieffer v. Imhoff, 2 Casey 438; Phillips v. Phillips, 12 Wright 178.

*J. H. Sloan* and *J. Goforth*, for defendant in error.—A right of way must be complete as granted: 2 Blackstone 36; 3 Id. 218, 241; Co. Litt. 36; Watson v. Bioren, 1 S. & R. 227; Shep. Touch. 88; Washburne on Easements 28. The deed must be construed most strongly against the grantor: Atkins v. Bordman, 2 Met. 463; Wissler v. Hershey, 11 Harris 333. The defendant in error even if the gate had remained across the lane for some time after he acquired title, would not by permitting it to remain waive any right: Lacy v. Arnett, 9 Casey 169.

The opinion of the court was delivered, May 17th 1873, by

WILLIAMS, J.—We are of the opinion that the court erred in holding that by "the free use, right and privilege of a passageway," we can only understand a way unimpeded by any means whatever, and that, as a necessary consequence, a gate hung across such way at its intersection with the turnpike, is a wrongful obstruction, for which an action will lie. Undoubtedly, as a general rule, the words of a grant are to be understood in their ordinary and natural sense, and if there is any doubt as to their meaning, they are to be taken most strongly against the grantor. But they are to receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was

[Connery *v.* Brooke.]

made: Cox *v.* Freedley, 9 Casey 124. At the time of the grant in this case, February 26th 1858, there was a gate across the passageway at its intersection with the turnpike, and it continued there, with the exception of the short interval it was out of repair, until the institution of this action in September 1869. What then was the intention of the parties, and what did they mean by " the free use, right and privileges of a passageway ten feet in width ?" Did they mean that it should be an open passageway into the turnpike without any gate at its intersection? If so, why was not the gate removed as soon as the grant was made? Why was it allowed to remain? The fact that the gate was there at the date of the grant, and that it was allowed to remain, cannot change the plain meaning of the words of the grant, but it may help us to ascertain the intention of the parties, if there be any doubt as to their meaning. *Contemporanea expositio est optima et fortissima in lege.* Undoubtedly, the plaintiff was entitled to the free use, right and privilege of passageway ten feet in width, with free ingress and egress at all times, for this is the language of the grant. But what is meant by the free use of a passageway? Does it necessarily mean that there shall be no gate or door hung across it, or if there is, that it shall always be kept open? Has not the owner of a passageway its free use if he hangs a gate across it at its intersection with the street? If I grant the free use, right and privilege of the hall of my house, with free ingress and egress at all times, must I take off the door leading into it, or keep it wide open in order that the grantee may have the free use of it? Or can he not have its free use if he can enter it by opening the door whenever he chooses? Without doubt I cannot unreasonably obstruct his use of it, but if the door amounts practically to little or no inconvenience, it seems to me that it is not necessarily a wrongful obstruction. Free is a relative term when applied to the use of a thing. It does not follow that I have not the free use of a room because I have to open a door in order to get into it; nor does it follow that I have not the free use of an alley because I have to open a gate to go in and out of it. A gate may be so placed as to be a practical and unreasonable obstruction to the free use of a passageway; and it may be so constructed and placed as not to amount to any practical obstruction to its use. Whether the gate in this case amounted to a wrongful obstruction was, therefore, a question of fact for the jury. If it was not a practical hindrance, and, under the circumstances, an unreasonable obstruction to the plaintiff's use of the passageway, then it was not a wrongful or illegal obstruction for which an action will lie.

But the court was right in holding that the judgment in the action of trespass brought by defendant against the plaintiff, for tearing down and breaking the gate, is no bar to the present action. It was for a different cause of action, and did not necessa-

[Connery *v.* Brooke.]

rily involve the defendant's right to keep up the gate. The plaintiff may have been guilty of trespass in breaking it down, though it is an obstruction to his free use of the passageway.

Judgment reversed and a *venire facias de novo* awarded.