# Mercantile Library Company of Philadelphia, Appellant *v.* Fidelity Trust Company, Trustee.

*Deed—Construction—Intention—Surrounding circumstances— Passageway—Pavement.*

1. The words of a grant are to receive a reasonable construction and one that will accord with the intention of the parties; but, in order to ascertain their intention courts will look into the circumstances under which the grant was made.

2. Where a market company owning a passageway along its property sixteen feet wide with a pavement five feet wide elevated above the cartway, enters into an agreement with an adjoining owner by which the latter opens a strip of his land ten feet wide "for the purpose of widening the said passageway (that is the sixteen-foot passageway) at that part to the width of twenty-six feet for the common use and privilege as a street or passageway" for both parties, their successors and assigns, and thereafter for forty years twenty-one feet of the passageway remained as a cartway for the use of wagons, a successor in title to the ten-foot strip will not be permitted to construct a pavement with a curb elevated several inches above the cartway and covering the entire ten feet upon which the easement was originally imposed; and this is the case although during later years a pavement had been constructed upon the ten-foot strip, but on a level with the cartway.

3. In such a case the owner of the ten-foot strip will not be required to remove grating, doors, etc. if they do not obstruct the right of passage.

4. In Pennsylvania the owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted.

Argued Jan. 3, 1912.  Appeal, No. 149, Jan. T., 1912, by plaintiff from decree of C. P. No. 5, Phila. Co., March T., 1909, No. 2096, on bill in equity in case of Mercantile Library Company of Philadelphia v. Fidelity Trust Company, Trustee for the Methodist Episcopal Orphanage under the will of Joseph M. Bennett, deceased.  Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ.  Decree modified.

Bill in equity for an injunction.

RALSTON, J., filed an opinion which was in part as follows:

First. [The fire-escape projects about four and one-half feet from the building and overhangs the alley. The permanent structure extends down to the second floor, and is connected with the ground by a movable ladder which is ordinarily kept hoisted up to the second floor, but may be lowered to the ground in case of necessity. This structure in no way interferes with the use of the alley as a street or passageway.] (25)  It is built entirely over the ten feet addition to the alley and is, therefore, over land owned by the defendant, but subject to the easement of passage.  In Schmoele v. Betz, 212 Pa. 32, the owner of the building upon which the fire-escape was fastened was not the owner of the ground of the alley over which it projected and had, as such owner, no right of passage in the alley.  It was, therefore, held that he was a trespasser and had no right to maintain the fire-escape, even although the use of the easement was not materially impaired.  In Mershon v. Walker, 215 Pa. 41, the defendant had no title to the soil of the court over which the fire-escape projected.  The Court said that it was impossible to distinguish the case from Schmoele v. Betz, supra, and on the authority of that decision, ordered the structure to be taken down.  In that case the defendant had no rights at all in the alley and could not use the fire-escape without using the alley; therefore, the structure was ordered to be removed without regard to whether or not it obstructed the alley.  In Mershon v. Walker, the Court said that while the plaintiffs "have standing to complain of any obstruction to or interference with the free and full exercise of the privileges they have in the surface of the court, they cannot have any with respect to any invasion by others above or beneath the surface, not affecting them."  These cases might be distinguished on this ground if the Supreme Court had

not said they were indistinguishable.   In Patterson v. Railroad Co., 8 Pa. C. C. R. 186, Thayer, P. J., said: "So long as he does not materially impair the use of the easement such as it was granted, the owner of the soil may erect such structures in or over or beneath the way as he chooses."   See also Stevenson v. Stewart, 7 Phila. 293.   In Schmoele v. Betz, referring to these two cases, the Supreme Court said: "In both cases the owner of the fee had granted a right of way over the premises, retaining the ownership of the soil, and it was held that the grantee could not enjoin him from building over the alley if it did not interfere with the use of the way.   But those are not the facts in this case."   In the present case, the owner of the soil has built over its own land; it has a right to use the alley, so that the use of the fire-escape throws no unlawful burden upon the way; [the fire escape is not an obstruction of the use of the alley and in no way interferes with the plaintiff's right of passage.]   (26) Therefore, the Court will not order it to be removed.

Second.   When the fence at the rear of the Chestnut street lot was moved ten feet to the south, it is not quite clear from the testimony what was done with the space.   It seems to have been paved in some way, but the weight of the testimony is, and it is so found as a fact, that no sidewalk elevated above the level of the cartway was built until 1903.   The building at 1019 Chestnut street was erected in 1882, and there was a paved way for ten feet back of it, but it does not appear from the testimony that it was a sidewalk as distinguished from the cartway.   The building which covers the lot Nos. 1015 and 1017 Chestnut street was erected in 1903, and at that time the present sidewalk was built.   It extends over the entire space of ten feet north of the buildings 1015, 1017 and 1019 Chestnut street, has a curb and is elevated above the level of the cartway from two and a half to five and a half inches. Whether or not this is an obstruction of the plaintiff's

right of way will depend upon the construction of the grant. The defendant's predecessor in title threw out and opened the northernmost ten feet of his lot in order to connect it with the existing sixteen feet wide street or passageway for the purpose of widening it to twenty-six feet. A street is a public thoroughfare, and consists of a cartway for animals and vehicles, and sidewalks for the use of pedestrians. The sidewalk is included in the general term street: Bouvier's Law Dic., titles "Street," "Sidewalk." [In the present case the "street" is not a public thoroughfare, but a private way; nevertheless, as the parties used the word, it is not unreasonable to conclude that they intended the way to have all the attributes of a "street," except that it should not be open to the public. This construction is strengthened by the fact that the plaintiff or its predecessors in title constructed a sidewalk of the width of five feet upon their side of the alley, showing that they understood that the "street" was to consist of the usual cartway and sidewalks. It is proper, therefore, that the defendant should be permitted to build a sidewalk upon its side of the way.] (27) It seems unreasonable, however, that it should occupy the entire space of ten feet which was granted for the purpose of widening the street. [The defendant's sidewalk should be cut down to the same width as the plaintiff's, namely, five feet, but as that cannot be done without interfering with the doors and openings which the defendant has built to facilitate entrance to and exit from its cellar, the Court will order the sidewalk to be reduced to a width of six feet, which will sufficiently widen the cartway without subjecting the defendant to an unreasonable loss, which ought not to be imposed upon it as the plaintiff permitted it to build these structures without objection.] (28)

Third. In the rear of each of the lots the defendant has made excavations which extend north under the ten feet strip about three and a half feet, and east and

west almost the entire breadth of the lots.  These are covered with iron gratings flush with the pavement of the sidewalk, and were put in at the time when the buildings were erected; that is, the one in the rear of 1019 was built in 1882, and those in the rear of 1015 and 1017 in 1903.  Besides these gratings, there are in the rear of 1015 and 1017 Chestnut street excavations under the sidewalk which are reached by iron doors.  These doors open upward and when closed are level with the sidewalk.  Under them are lifts which are used for raising and lowering freight out of and into the cellars.  In Mershon v. Fidelity Ins., Trust & Safe Deposit Co., 208 Pa. 292, similar gratings were ordered by the Court to be removed.  In that case, both the plaintiff and defendant had an easement of passage in a court "with or without horses, cattle, carts and carriages;" either had title to the soil of the court.  The defendant had no right to excavate under the court and change its condition from what it had been before.  In the present case the defendant is the owner of the ground and has a right to excavate under the street so long as it does not obstruct the plaintiff's right of passage.  [As the alley in question is a "street" with sidewalks, the ordinary structures common in the sidewalks of the city, such as area-ways and cellar doors, are not necessarily and per se unlawful obstructions.] (29)  Similar openings, with gratings and doors, exist in the plaintiff's sidewalk, and no objection was made to the defendant's structures until six years after they were built.  This would seem to show that the parties intended to use the sidewalks in the ordinary way that other sidewalks in the City are used.]  (30)   Neither the gratings nor the cellar doors when closed interfere in any way with the passage of pedestrians over the sidewalk.  The cellar doors when open would, of course, obstruct the sidewalk, but it has not been shown that they are kept open for unreasonable periods of time; they, therefore, constitute only such an obstruc-

tion as is incidental and reasonably necessary to the use of the sidewalk for business purposes.

[Being of opinion that the fire-escape, the gratings and the cellar doors do not interfere with, nor obstruct the plaintiff's rights in the street, the Court will not order them to be removed,] (31) but will order the defendant's sidewalk to be reduced to the width of six feet.

*Error assigned* was the decree entered in accordance with the opinion.

*George Henderson* and *Alex. Simpson, Jr.,* for appellant.—The gratings and iron doors invade the easement and should be enjoined even though the raised sidewalk is declared to be within the appellee's rights: Mershon v. Fidelity Ins., Trust & Safe Deposit Co., 208 Pa. 292.

The overhanging fire escape invades the easement and should be enjoined: Ellis v. Academy of Music, 120 Pa. 608; Reimer's App., 100 Pa. 182; Com. v. McNaugher, 131 Pa. 55.

*A. U. Bannard,* with him *John McConaghy, Jr.,* for appellee.—Duross v. Singer, 224 Pa. 573; Patterson v. P. & R. R. R. Co., 26 W. N. C. 327; Stevenson v. Stewart, 7 Phila. 293; Carter v. Lebzelter, 45 Pa. Superior Ct. 478; Connery v. Brooke, 73 Pa. 80; Greenmount Cemetery Co.'s Appeals, 4 Atl. Repr. 528; Kohler v. Smith, 3 Pa. Superior Ct. 176.

OPINION BY MR. JUSTICE ELKIN, February 12, 1912:
This bill was filed to compel the removal of certain alleged obstructions to the free and uninterrupted use of a passageway created by an agreement in writing between private parties. The assignments of error are numerous, but the legal questions involved with which we are primarily concerned are few and not difficult

of solution.  Our first inquiry must necessarily relate to the construction of the agreement of 1864.  What rights and privileges were granted by this agreement, and what kind of use in the passageway did the parties intend to be enjoyed?  The words of a grant are to receive a reasonable construction and one that will accord with the intention of the parties; but, in order to ascertain their intention, courts will look into the circumstances under which the grant was made:  Connery v. Brooke, 73 Pa. 80.  Love, the predecessor in title of appellee, covenanted with the predecessor in title of appellant to "forthwith throw out and open the northernmost ten feet" of a certain lot of ground to be connected with a sixteen-foot wide passageway belonging to the adjoining owner with whom he covenanted "for the purpose of widening the said passageway (that is the sixteen-foot passageway) at that part to the width of twenty-six feet for the common use, and privilege as a street or passageway of him, the said Thomas C. Love, his heirs and assigns, and of The Franklin Market Company aforesaid, their successors and assigns, and his and their respective tenants and occupants."  There can be no doubt that the parties intended by their agreement to make a passageway for their common use twenty-six feet in width, nor is this construction questioned by either side of the present controversy.  Indeed, each side accepts this view as the proper interpretation of the agreement, but insists that when the covenant is so understood it sustains their respective contentions although widely at variance.  The differences between the parties grow out of the kind of use authorized to be made of the passageway.  Appellee, the successor of Love in title, has construed the covenant to give it the right to construct a pavement with a curb elevated several inches above the cartway and covering the entire ten feet upon which the easement was originally imposed.  If this interpretation be sustained it means the denial of the right of

appellant to use any part of the ten feet for cartway purposes. Taking into consideration the circumstances under which the agreement was made, such a construction would in our opinion do violence to the intention of the parties. The Market Company, one of the original parties to the agreement, dedicated sixteen feet to the common passageway, while the other party only dedicated ten feet. If it should now be determined that the party who dedicated the ten feet to the passageway has the right to construct a curb and pavement elevated several inches above the cartway so as to occupy the entire strip of ground thus dedicated, no practical advantage would result to the Market Company or those succeeding to its title. It seems perfectly clear that the purpose of the Market Company in entering into the agreement was to secure a wider passageway for the use of its patrons and to afford more convenient access to its place of business. It is scarcely conceivable that the Market Company gave Love the right to make use of its sixteen feet of ground as a passageway for the benefit of himself and tenants, and that in return it was to receive no substantial benefit in the use of the ten feet of ground dedicated by Love to the common use of both parties. Again, if the intention of Love was simply to construct an elevated pavement upon his ten feet of ground, there was no necessity for him entering into an agreement with the adjoining owner to effectuate this purpose. He had the right to do this without consulting the wishes of any one. It is evident that both parties entered into the agreement for purposes mutually beneficial and this could only mean that the common passageway should be widened by the additional ten feet. Nor is it open to doubt that the passageway thus widened was for a long period of years used as a cartway for horses and wagons as well as a means of access for persons. The parties themselves in effect placed this construction upon their own agreement by the use made of the passageway. It is true that in later years a pave-

ment was constructed upon the ten-foot strip of ground but this pavement was level with the cartway and answered both purposes until it was elevated at the time about which complaint is here made. Under these circumstances we are constrained to hold that the parties intended the passageway mentioned in their agreement to be used as a means of access for horses, wagons, vehicles and persons, and that this right is interfered with by the elevated pavement about which complaint is made. The pavement should be lowered to the level of the cartway in order to carry out the intention of the parties. We think this was the agreement of the parties and that it is controlling here. In this view of the case it is not necessary to discuss what constitutes a street or what rights and privileges abutting property owners have generally in public thoroughfares.

Appellee contends that it should have the right to maintain a pavement with curb elevated above the cartway on the ten-foot strip of ground because appellant, or its predecessors in title, constructed a five-foot wide pavement at the other side of the passageway. If the facts warranted it, this argument would have strong equitable grounds to rest upon. But under the facts as found, and the evidence is all to this effect, there existed at the time the agreement of 1864 was entered into on the side of the Market Company property a raised curbed sidewalk five feet wide. This sidewalk was a part of the sixteen feet dedicated to the common use of both parties by the agreement in question. The covenant must be understood to apply to the physical conditions then existing on the ground. The Market Company gave sixteen feet, or eleven feet of cartway, while Love only gave ten feet which was a less number of feet than the Market Company set apart for cartway purposes. The parties were familiar with the conditions on the ground and if Love intended to reserve the right to construct a raised pavement on the ten-foot strip of ground, he

should have done so in his agreement. He did not do so, and for a period of forty years, and perhaps more, no attempt was made to construct a pavement raised above the cartway on his side of the passageway. We think this clearly shows that the parties either intended that the easement should be superimposed upon the physical conditions then existing on the ground, or that these conditions in view of the subsequent acts of the parties should be considered in determining the intention of the parties under the agreement. In either view the conclusion is the same, and the ten-foot strip of ground must be regarded as an addition to the passageway, which we have said means a passageway for every purpose contemplated by the agreement. Certainly, a raised pavement with a curb narrows the passageway and seriously interferes with some of the uses intended to be enjoyed.

There is nothing in the agreement which defines what kind of a passageway shall be maintained, and we can see no good reason why the appellee may not, if it chooses, construct a pavement as part of the passageway and on a level with it, so that it may serve as a convenience to pedestrians as well as for cartway purposes. The parties themselves made such use of the passageway for many years, and there is nothing in the agreement to deny them this right.

The other legal question involved is of a different character. Appellant contends, not only that the pavement should be lowered to the level of the cartway but that the gratings, doors, fire escape and other alleged obstructions should be removed. The learned court below refused to so decree and we have concluded, after full consideration, upon the facts as found, that the proper conclusion was reached. We do not agree that the case at bar in this respect is ruled by Schmoele v. Betz, 212 Pa. 32; Mershon v. Walker, 215 Pa. 41, and other cases relied on by appellant. In each of the cases cited to sustain this contention, the party against whom complaint was made, was not the owner of the fee upon

which the easement was imposed. This is a material fact and one which must be taken into consideration in properly determining the rights of the parties in such cases. In this commonwealth the rule always has been that the owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted. In a very recent case, Duross v. Singer, 224 Pa. 573, this court reiterated the rule by making use of the following language: "The grant of a fee subject to an easement carries with it the right to make any use of the servient soil that does not interfere with the easement, and this right cannot be abridged by words used in the granting clause unless the intention to limit the estate is clearly expressed, or is a necessary implication from the words used." In 1864, when the agreement in question was entered into Love was the owner of the fee in the ten-foot strip of ground and he only granted the right of passage over it. He retained all other incidents of ownership and his successors in title have the undoubted right to the enjoyment of the fee in every way that does not materially impair the use of the easement. If there had been, or if there shall hereafter be, any substantial interference with the use of the passageway, it would be the duty of courts to give relief. But in the case at bar the learned court below sitting as a chancellor has found as a fact that there has been no substantial interference with the use of the passageway either by the gratings in the pavement, or by the doors, or by the fire escape, or by the excavations under the pavement. All of the obstructions complained of are upon the property of appellee and have been constructed as an incident of ownership in the fee. The owner of the servient soil has the right to make use of his property as he chooses, if by so doing, he does not substantially interfere with the easement. The learned court below has found as a fact that there was no substantial interference with the use of the passageway and we must accept this finding as binding

upon us. In this connection counsel have submitted since the argument of the case a photograph intended to show recent conditions of a fire escape, for the purpose no doubt of indicating a substantial interference with the use of the easement, but we must take the record as it comes to us from the court below, and cannot undertake to decide this appeal upon facts not considered by the chancellor.

We have concluded that the decree should be modified by requiring appellee to lower the curb and pavement to the level of the cartway, but in all other respects the decree to stand as entered so long as conditions remain the same.

Decree modified as above indicated, and as modified, it is affirmed. Costs to be divided equally between the parties.