# S. Austin Bicking Paper Manufacturing Co. *v.* Worrall, Appellant.

*Easement—Right to a tailrace—Adverse possession—Deed—Obstruction of easement.*

Where a deed reserves to the grantor the right to a tailrace from a grist mill, and the grantee in the deed covenants not to obstruct the passage of the water in the race, and the owner of the fee, thereafter, constructs across the mill race a one-story frame building with a trapdoor in the floor, and this structure remains in its original condition for over twenty-one years without the owner of the easement ever having taken up the boards to clean the race, the grantee, will by adverse use of the structure, have extinguished the right of the owner of the easement to interfere with the further use of the building; but if the owner subsequently, but within the prescriptive period adds an additional story to the structure, the owner of the easement is entitled to recover damages from the owner if the remodeled structure causes an additional obstruction to the race.   If, howeyer, the remodeled structure causes no more obstruction than the original structure, he is not entitled to recover anything.

The reservation in such a deed did not keep for the grantor the mill race and with it the right to the open space up to the sky.   The grant of the fee subject to the easement carried with it the right to the grantee to make any use of the servient soil that did not interfere with the easement.


Argued Nov. 22, 1917.   Appeal, No. 325, Oct. T., 1917, by defendant, from Judgment of C. P. Chester Co., Jan. T., 1917, No. 100, on verdict for plaintiff in case of S. Austin Bicking Paper Manufacturing Company v. Harry Worrall.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ.   Reversed.


Trespass to recover damages for interference with the use of an easement of a mill race.

The opinion of the Superior Court states the facts.

BUTLER, P. J., charged in part as follows:

A great many years ago a certain individual owned

a tract of land that included the plaintiff's mill property and the holding now possessed by the defendant, and from him through various conveyances both to the plaintiff and the defendant have come certain rights with certain limitations, according to the various deeds of transmission. There has come to the plaintiff in connection with this mill property the right to enjoy certain privileges with respect to the tailrace of this mill as it passes over the property now possessed by the defendant, and so far as the deeds are concerned, going no further than the deeds, the defendant has, holds, and enjoys his present property subject to the right granted by the various deeds terminating in the final deed to the plaintiff to certain privileges with respect to the raceway. [Now, we believe under the undisputed evidence in this case, in so far as the case rests on the documentary evidence, on the grants of privilege to the plaintff and of restriction, reservation against the defendant,—as the case stands simply on the record evidence, we think insomuch as it is admitted that the defendant is maintaining upon his property a permanent structure or two-story building that largely occupies the overhead site of the race, so far as the record evidence goes there is an obstruction of and interference with the plaintiff's right. We think it is very clear under the grant and under the original restrictions which have passed respectively in effect to the plaintiff and to the defendant, that when that grant was created, and it has been handed down in so far as the records are concerned just as it originated, so far as we understand the parties did not contemplate at all that the servient tracts, the owners of the servient tracts through which this race extended would construct over and above the water of the raceway and bearing on either bank of the raceway permanent buildings;] and [insomuch, as I have said, it is admitted here that the defendant is maintaining a permanent building which occupies the whole width of this raceway upon his, the defendant's property, and all of the length of it excepting between

three and four feet, I say it follows under the law as the law will interpret these deeds containing the grant and the restrictions, it must follow that the defendant is restricting and trespassing upon the plaintiff's privilege and the plaintiff's right; and as I view the matter your verdict must be for the plaintiff in this case, unless the evidence satisfies you fairly and reasonably that for twenty-one years prior to the bringing of this present suit, continuously, notoriously, adversely the defendant and his predecessors have maintained an obstruction or construction in all substantial particulars and degrees like that which is now complained of.]  The burden is upon the defendant to satisfy you that this is the case. If he has so satisfied you, then he has satisfied you of what requires you to find that notwithstanding the original rights of the respective parties to these properties, that to-day, at the time of the bringing of this suit, the defendant had acquired the right to thus encumber this raceway.   Because, if a man continuously, for twenty-one years, under an apparent claim of right, invades, uses adversely, his neighbor's property or his neighbor's right, the law presumes that there has been a grant; the law concludes at the end of that twenty-one years that the defendant actually has the right to do that thing.

Now, there is not any dispute in this case, as I understand it, that there has been some impinging for more than twenty-one years before this suit was brought upon the full, free rights given to the plaintiff, but the contention is earnestly made that that impinging, that that burden, that that interference has been very distinctly less than the interference that is now complained of, less than the interference, than the obstruction that was present when this suit was brought.   [As I understand the evidence, there is no substantial dispute, but that for more than twenty-one years prior to the bringing of this suit, this raceway was covered by a construction over the entire extent of its passage through what is now the defendant's property.   It was covered according to Dr.

Dowlin—I do not know how far back—but decidedly more than twenty-one years prior to the bringing of this suit, by a platform, what has been called a platform, and you will remember his description of that platform. According to him, however, instead of the superstructure placed on that platform, or placed over the raceway, instead of its being a very permanent building extending the full width of the raceway and most of its length,— according to Dr. Dowlin it was a one-story summer kitchen that extended only a part of the distance across the raceway and a substantially less distance along the raceway than does the present two-story structure.]

You will remember his testimony in connection with all the testimony, and give to it just such weight as it ought to have. He tells you that the rear end of the brick building to which this summer kitchen, or this original kitchen was attached, to the north, that the rear end of that brick structure, the main part of the building—that the rear end of it was between three and four feet south of the south line of this raceway; and he tells you that this wooden addition, this one-story addition that he made extending further north, was fastened to the rear end of the brick structure; and he tells you that he thinks according to his best recollection that that wooden structure did not extend more than ten feet, that it did extend ten feet northward.

[Now, if he is right, it apparently would not span more than seven and one-half feet of the raceway. If he is right there would be a very considerable portion of the width of the raceway north of the north line of that kitchen. He tells you that the kitchen in its east and west line, in its width in other words, commenced on the west with the western line of the property here involved, and that he thinks it was not more than eight feet wide. Now, if he is right, then there must have been ten feet of this raceway lying between the eastern side of this structure and the eastern line of this property, covered only by the platform. There may be some other evidence presented

in behalf of the plaintiff with a view to satisfying you of the character of structure that was in place prior to the structure now complained of. If there is, to the full extent you will give it proper consideration.]

On the other hand, in behalf of the defense the effort has been made to satisfy you that the structure originally there, there before the structure that is now complained of, was to all intents and purposes the present structure saving only that the original structure was one story high while the present structure is two stories high. A number of witnesses have been called who have given it as their recollection, one of them Ballantyne, who tells you his reason for thinking that he recalls the fact, and I believe another man who worked on the building, and certain other witnesses. And, generally speaking, they tell you that the original old kitchen building, while it was only one story high, did extend across the raceway and did extend eastward as near the adjoining alley as does the present structure; and that the balance of the distance eastward was spanned and covered just as, substantially, at present with a platform of something less than four feet, I think between three and four feet, having a trap in it.

Thus the defense endeavors to satisfy you that for more than twenty-one years prior to the bringing of this suit with the property of the defendant in the hands of his predecessor in title and in his hands, a construction has been maintained like the construction now complained of to all intents and purposes, and the contention therefore is that under the law the right to maintain the structure now complained of has ripened into a title to do so.

Verdict and judgment for plaintiff for $5. Defendant appealed.

*Errors assigned,* among others, were (1-4) above instructions quoting them.

*S. Duffield Mitchell,* for appellant.—The owner of the

fee in way over which is a right of way may erect a building over said way, if in so doing he does not interfere with the right of way: Stevenson v. Stewart, 7 Philadelphia 293; Patterson v. Philadelphia & Reading R. R. Co., 8 C. C. 186; Mercantile Library Co. v. Fidelity Trust Co., 235 Pa. 5; Duross v. Singer, 224 Pa. 573.

*A. M. Holding,* for appellee.—It seems to us that the vice of the entire charge of the court was in differentiating between the platform and the superstructure thereon, both of which covered the entire extent of the raceway through what is now the defendant's property.

The grant of a way "not to be encumbered in any way or by any person whatever," precludes the owner of the servient tenement from even maintaining bars across the way: Mineral Springs v. McCarthy, 34 Atl. Rep. 1043; Ellis v. Academy of Music, 120 Pa. 608; Flaherty v. Fleming, 52 S. E. 857.

That the defendant had been permitted to cover the race by a platform in whole, or in a large part even, removable by the mill owner when he should desire access to the race, or to remove obstructions therefrom, would certainly not warrant a permanent and immovable covering maintained for a period of less than twenty-one years: McCaullum v. Germantown Water Co., 54 Pa. 40; Jones v. Crow, 32 Pa. 398; Irving v. Media Boro., 10 Pa. Superior Ct. 132; Darlington v. Painter, 7 Pa. 473.

OPINION BY TREXLER, J., July 10, 1918:

The plaintiff's predecessor in title conveyed certain lands, including the premises owned by the defendant and reserved "the right to the tailrace from the gristmill that now passes through said lots, the width at bottom to be and remain twelve feet, with such a slope or inclination of the sides or embankments as will best preserve them. And they further reserve to themselves, their heirs and assigns the free and undisturbed right to enter on the premises at all times and remove all and

every obstruction to the easy flow or passage of the water along the same. And the several parties do for themselves, their heirs and assigns covenant and agree to and with the said (grantors) and their assigns that they will never do nor cause to be done any act or thing whereby the said water will or may be obstructed in its passage."

Many years ago the owners of the fee erected a platform across the mill race and put a one-story frame kitchen thereon. There is some testimony to the effect that the platform was constructed of one-inch boards nailed down, and that there was a small trapdoor left in the platform. This structure was allowed to remain for over twenty-one years. Afterwards, and within the prescriptive period preceding the commencement of this suit, the structure was changed. An additional story was put upon the kitchen and according to the testimony of some it was enlarged. Did this change damage the plaintiff and interfere with his rights? We do not think that the reservation kept for the grantor the mill race and with it the right to the open space up to the sky. The grant of the fee subject to the easement carried with it the right to the grantee to make any use of the servient soil that did not interfere with the easement: Duross v. Singer, 224 Pa. 573. The owner of the servient soil has the right to make use of his property as he chooses, if by so doing, he does not substantially interfere with the easement: Mercantile Library Co. v. Fidelity Trust Co., 235 Pa. 5; Chambersburg Woolen Co. v. Hager, 66 Pa. Superior Ct. 63.

We may assume that the erection of the platform was an invasion of the plaintiff's rights, but when these rights were gone by twenty-one years' adverse enjoyment of benefits inconsistent with said rights, the plaintiff could only recover if he showed a new or additional invasion. Although the platform evidently interfered with plaintiff's approach to the race, it does not appear in the evidence that he ever took up the boards in order to clean the race. If this platform effectually cut off the ap-

proach to the race, then any superstructure put upon it was not an invasion of plaintiff's rights nor an interference with his reservation.

We think the case should have been submitted to the jury along these lines. The platform heretofore erected having, at least to some extent, deprived the plaintiff of access to the race along the lines of defendant's property, did the change of the platform or of the superstructure thereon in any substantial degree add to that deprivation? If part of the platform was removable and it can be shown that plaintiff within the twenty-one years exercised the right to remove it for the purpose of entry into the race to remove obstructions therefrom, and if the new erection on the top of the platform prevented him from doing the same as he had theretofore done, he would be entitled to damages. There was no evidence that the platform, except a portion, was constructed in a temporary manner, in order that it might be readily removed. On the contrary, to afford access to the race there was a trapdoor put in it which could be opened. and closed at will, and this trapdoor still exists. If the former platform restricted and obstructed the plaintiff as much as the present structure, he is not entitled to recover anything in the case. If the remodeled structure in any way caused an additional obstruction to the race, then he should recover. This is substantially what the learned trial judge said in parts of his charge, but he also laid great stress upon the superstructure. We quote from the charge, "There is no substantial dispute, but that for more than twenty-one years prior to the bringing of this suit, this raceway was covered by a construction over the entire extent of its passage through what is now the defendant's property. However, instead of the superstructure placed on that platform or placed over the raceway instead of its being a very permanent building extending the full width of the raceway and most of its length, according to Dr. Dowlin it was a one-story summer kitchen that extended only a part of

the distance across the raceway and a substantially less distance along the raceway than does the present two-story structure." "If he is right then there must have been ten feet of this raceway lying between the eastern side of this structure and the eastern side of this property, covered only by the platform." Further on, "We think the real matter and the material matter in the case is the superstructure." The real question was the character of the platform and if the platform, whether substantially built or not, successfully prevented access to the race for twenty-one years on the part of the plaintiff and his predecessors in title, defendant, after that time, had the right to put any structure on the platform, except on such portion if any as was specially designed to afford access to the race. The right of access to the extent of defendant's interference thereof was gone forever, and as to that there was no right of plaintiff that could be invaded above the platform. Certainly the addition of another story to the kitchen would under such conditions add no additional obstruction to plaintiff's approach to the race, neither would the extension of the kitchen across the platform add anything. The third and sixth assignments of error are sustained.

We do not think there was sufficient in the case to raise an estoppel against the plaintiff. Whilst it appears that he had knowledge of the erection of the second building, we find nothing in the case which would indicate that defendant was misled by any act of plaintiff's predecessor. No estoppel can be inferred from his mere silence.

The judgment is reversed with a venire facias de novo.