## The Haig Corporation v. Thomas S. Gassner Co., Inc.

*J. Russell Breitinger* and *W. Albert Sanders*, for plaintiff.

*Saul, Ewing, Remick & Saul* and *Frederick A. Van Denbergh*, for defendant.

CRUMLISH, J., October 31, 1947.—This bill is brought to enjoin defendants from maintaining a gate across an

alleyway over which plaintiff has an easement of passage. Plaintiff alleges ownership since September 12, 1941, of the premises 4541 Wayne Avenue, Philadelphia, Pa., and ownership by defendant of the premises 4537 and 4539 Wayne Avenue, Philadelphia, Pa., as well as the premises adjoining those of plaintiff to the northward. Plaintiff alleges that title to all this property was originally held by the same person, and that person, in 1893, conveyed the lot now owned by plaintiff together with the "free and common use and privilege and right of way . . . over and along a certain . . . as and for a passageway and of ingress, egress, and regress over and along the same at all times hereafter forever"; that the common grantor granted the portion owned now by defendant, which includes the passageway, under and subject to the aforementioned right of way; that defendant has constructed a gate across the entrance of the passageway which blocks and restricts plaintiff's use thereof; that defendant has installed a lock upon the gate and kept the gate locked "at all and various times", thereby blocking and restricting plaintiff's use of the passageway; that defendant has used and continues to use the passage for its sole and exclusive use; that the infringement of plaintiff's right of way caused plaintiff inconvenience, injury, financial hardship and loss, and irreparable damage; that despite notice to defendant to remove the gate, defendant has refused to do so. Plaintiff asks that defendant be enjoined from maintaining the gate and the lock and that it be granted such other relief as may be necessary and proper.

Defendant admits substantially all of plaintiff's averments, but denies that the gate was erected to prevent use by the dominant estate, but instead to protect that estate and all other properties using the passageway; defendant also denies that the gate is kept locked at all times, and alleges that it is locked only at

night, and that plaintiff has been offered a key to the gate so plaintiff may use it at night. Defendant alleges that plaintiff has not been caused any inconvenience, injury, financial loss or damage whatsoever, and that neither plaintiff nor its tenants nor any other person who for years past has occupied the property now owned by plaintiff has ever used, desired to use, or attempted to use the right of way. Finally, defendant alleges that plaintiff has no need of relief, has no use for the passageway, and has acquiesced in the erection of the gate which was in existence when plaintiff purchased its property.

From the admissions in the pleadings, as offered in evidence, and from the testimony, the court makes the following

### Findings of Fact

1. Pursuant to a stipulation of counsel the caption has been amended to show the new owner, The Haig Corporation, as plaintiff. All pleadings in the matter are to be applicable to new plaintiff.

2. Plaintiff is the owner of premises 4541 Wayne Avenue, Philadelphia, Pa., more fully described in paragraph 2 of the bill, having acquired title to the property from Veronica Koumjian, who initiated this action.

3. Defendant is the owner of premises 4537, 4539 and 4543 Wayne Avenue, Philadelphia, Pa.

4. Included in the aforementioned property owned by defendant is an alleyway, described in paragraph 4 of the bill. Plaintiff is entitled to the "free and common use and privilege and right of way . . . as and for a passageway and of ingress, egress, and regress over and along" this alleyway "at all times hereafter forever". This right was created by deed in 1893.

5. In 1931, 10 years prior to the date that original plaintiff took title to premises 4541 Wayne Avenue, defendant erected a wooden gate at the Wayne Avenue

entrance of the alleyway in order to protect its business property from fire and other nuisances which might be committed by trespassers. In 1932, the wooden gate was replaced by a metal gate equipped with an ordinary padlock.

6. The gate is closed at all times when the alleyway is not being used, but it is locked only from 5:30 p.m. to 8 a.m., on weekdays, and from Saturday at 12 noon to Monday at 8 a.m.

7. The aforementioned gate is a necessary and reasonable protection for defendant's business properties, and also serves as a protection for the property owned by plaintiff.

8. Defendant has offered to furnish plaintiff, plaintiff's tenants, and at least one prospective purchaser of plaintiff's property with a key to the lock and is willing to give keys to any proper persons authorized by plaintiff to receive them.

9. Since 1931 when the wooden gate was erected neither plaintiff, its predecessors in title, their tenants, nor any other person who has occupied plaintiff's premises ever used, desired to use, or attempted to use the alleyway.

10. Plaintiff has no present use for the alleyway.

11. Both present plaintiff and original plaintiff took title to the property with full knowledge of the existence of the gate and at no time until just prior to the institution of this action did they, or their predecessors in title, ever object to the erection or maintenance of the gate.

## Discussion

Plaintiff is the owner of premises 4541 Wayne Avenue, Philadelphia, Pa. Defendant is the owner of premises southeast corner of Wayne Avenue and Apsley Street, 4537, 4539 and 4543 Wayne Avenue, Philadelphia, Pa. The easement involved runs "parallel

with Apsley Street at the distance of about one hundred and fifty feet southeast therefrom extending southwest into said Wayne Avenue of the width of eleven feet one inch on said Wayne Avenue and in depth northeast about one hundred feet, narrowing at that depth to nine feet ten and three-eighth inches" and communicates at right angles with a certain three-feet wide alley in the rear of litigant's properties, 4537-43 Wayne Avenue; and that part of the passageway which runs into Wayne Avenue lies between defendant's Wayne Avenue and Apsley Street property and its property to the south, 4543 Wayne Avenue. The locked gate, of which plaintiff complains, is at the Wayne Avenue entrance of the passageway. Further, from the record, it appears: (a) That defendant is the owner of the servient tenement; (b) that the grant of the easement is described in plaintiff's deed: "Together with the free and common use and privilege and right of way as opened by Samuel R. Clausen over and along a certain passage laid out parallel with said Apsley Street at the distance of about one hundred fifty feet southeast therefrom extending southwest into said Wayne Avenue of the width of eleven feet one inch on said Wayne Avenue and in depth northeast about one hundred feet narrowing at that depth to nine feet ten and three-eighth inches as and for a passageway and of ingress, egress and regress over and along the same at all time hereafter forever, and together with the free and common use, right, liberty and privilege of a certain alley three feet in width in the rear of premises described leading into and communicating with the roadway above mentioned", and (c) that the said Samuel R. Clausen is a common predecessor in title of both litigants.

It is well settled in Pennsylvania that a dominant owner is entitled to enjoy the easement free from any substantial interference on the part of the servient

owner. Therefore, the question arising here, may be stated thus: Is the erection, by the servient owner, of a swinging gate, equipped with a lock, at the entrance of a private passageway, an unreasonable or material interference with the easement? Although there are a number of decisions in this jurisdiction dealing with gates, barriers, fences and similar interferences, there is none that has dealt with the element of a locked gate as a possible, material or unreasonable interference with the use. Consequently, the question involved must be decided on the rights of the parties arising from the legal principles which have application to passageways and similar interference therewith. There is no "clear and definite" rule to determine what use by the owner of a servient estate is an "unreasonable interference" or a "material interference" with the easement. The cases decided in this jurisdiction, however, furnish us with a considerable guide in the matter of the erection of gates across a passageway. Thus, we find in Connery v. Brooke, 73 Pa. 80 (1873), the erection of a swinging gate across the way to prevent cattle from straying, was held not to be a material interference with the easement. In Demuth v. Amweg, 90 Pa. 181, 185 (1879), it was held, ". . . surely the grant of a private way may exist as well with as without a gate. The design of a gate is to protect the way from trespass—from the intrusion of those who have no right, but it is not an obstruction, but rather a convenience to those who have a right." In Hartman v. Fick, 167 Pa. 18, 20 (1895), in a per curiam opinion, it was held:

"The plaintiff conceded the defendant's right of way over his land, and the defendant conceded in effect that the gate erected by the plaintiff across the right of way for the protection of his fields was not an unreasonable obstruction to, or interference with, the right of passage. This left no question undisposed of except that of the legal right of the owner of the land

to protect his fields by such a gate or other structure as should not unreasonably interfere with the use of the way. The easement was only for passage. The land remained the property of the plaintiff and he had a right to use it for any purpose that did not interfere with the easement. To do this it might be necessary under some circumstances to inclose the way with a field over which it passes, and if this is done with a reasonable regard to the convenience of the owner of the easement it affords him no just ground of complaint."

In Kohler v. Smith, 3 Pa. Superior Ct. 176, 180 (1896), it was held:

"In the case before us there was no evidence that the gate erected by the defendant was a practical hindrance nor that it was, under the circumstances, an unreasonable obstruction to the plaintiff's use of the right of way across the defendant's unenclosed field. There is some evidence on the part of the plaintiff that it was an inconvenience to open the gate, but his explanation shows that it was only the usual and necessary inconvenience which was caused by descending from his wagon, opening the gate, driving through it and closing it again. This we think, under all the authorities, cannot be considered in any sense as an unreasonable obstruction nor a hindrance to the free use of the way by the owner of the easement."

In Helwig v. Miller, 47 Pa. Superior Ct. 171 (1911), the syllabus states:

"Where land is subject to the easement of a private right of way in favor of an adjoining owner to enable the latter to reach the public highway, the owner of such land may for the protection of his stock and property erect a proper swinging gate at the point where the right of way opened into the public road, in substitution of a pair of bars which had been at one time used, but had been removed or disappeared; . . ."

In Nickels v. Hand in Hand Cornet Band, etc., 52 Pa. Superior Ct. 145, 150 (1912), it was held:

"The learned court below was therefore right in entering a decree restraining the defendant from maintaining any substantial barrier to the free and reasonable enjoyment by the plaintiff of his easement. But it does not follow that everything in the nature of a barrier dividing the private alley from the public street would amount to a legal obstruction of the right of the plaintiff to reasonably enjoy his easement. Because the alleyway is subject to the free and unobstructed use by the owners or tenants of the three lots, the law does not, under all circumstances, require that it should be absolutely thrown open to be used by everybody and thus probably become a place which could easily be converted into a nuisance to all concerned. If for the protection of their common rights, one or more of the parties should erect across the opening a swinging gate that would permit the free entrance or exit of vehicles and that would be so constructed as to be easily operated, we are not prepared to say that such a gate would be an obstruction to the legal right of any one of the lot owners: Helwig v. Miller, 47 Pa. Superior Ct. 171."

In Ziegler v. Hoffman, 78 Pa. Superior Ct. 115 (1921), the court held that the erection of movable barriers across the right of way for the purpose of preventing the straying of cattle was not a material interference. See also Kimble v. Kelly, 8 Wash. Co. 1 (1927), opinion by Cummins, J.; Diaddorio v. Vogt, 32 Del. Co. 256 (1943), opinion by Sweney, J. Cf. Fratto v. Siriano, 3 Fayette 53 (1940).

Was the locked gate erected "with a reasonable regard for the convenience of the (dominant) owner"? Does it protect the common rights of both owners by preventing a nuisance? These are elements involved in determining whether the locked gate is an unreasonable or material interference with plaintiff's right.

Mr. Loechel, president of defendant company, testified that in 1931 a wooden gate was erected, and that about a year later a metal gate was substituted "to avoid nuisances by the boys . . . from fires . . . because we have the alleyway there, and we have paints and stuff like that, and we didn't want them to bust (sic) it open", and that the worth of his plant is about $300,000. A personal inspection of the locus in quo by the chancellor discloses that plaintiff's property, 4541 Wayne Avenue, and defendant's properties adjoining, 4539 and 4537 Wayne Avenue, are occupied by combined stores and dwellings; defendant's property, 4543 Wayne Avenue, contains a solid office building covering the entire space of the lot, and abutting the three-feet wide alley in the rear; that the driveway in question runs from Wayne Avenue to the three-feet wide alley, and that no fences separate the properties from each other, and no fence separates them from the three feet alley in the rear. Therefore, if the locked gate is removed from the driveway, persons of mischievous or malicious temperaments will have easy access to the properties of the parties; and the open space, or court in the rear of premises 4537-41 Wayne Avenue provides an ideal rendezvous and place of operation, hidden from public view, for such persons. In fine, the absence of a locked gate would make possible an ideal place of easy operation for persons disposed to do harm to property of either or both litigants.

Accordingly, the conclusion of the chancellor is that defendant may maintain, equipped with a lock, a gate across the passageway without materially interfering with plaintiff's right of free and common use. And the use of a lock on the gate in this case should not be enjoined; without a lock, it would not serve its purpose. Certainly, it is easier to open a lock, and then close it behind you, than it is to move and replace the logs

making up such a movable barrier as was permitted in Ziegler v. Hoffman, supra. In Connery v. Brooke, supra, 84, a leading case on this subject, Justice Williams said:

"If I grant the free use, right and privilege of the hall of my house, with free ingress and egress at all times, must I take off the door leading into it, or keep it wide open in order that the grantee may have the free use of it?"

Carrying the analogy a little further, we might ask whether the grantee would not still have the free use of the hall if the doors were kept locked and he was supplied with a key? In Ellis v. The Academy of Music, 120 Pa. 608, 622 (1888), Chief Justice Gordon said: "A gate may or may not be an obstruction, depending upon circumstances, . . .". The fact that plaintiff might have to carry a key is no onerous burden.

### Conclusions of Law

1. The maintenance of the gate in question, which is kept locked, is not a nuisance or a material interference with or impairment of plaintiff's right to use the alleyway, provided that defendant supply keys to plaintiff.

2. Plaintiff has not been caused any actual or threatened inconvenience, injury, financial loss, or other damage by reason of the erection and maintenance of the gate and padlock.

3. The erection of a gate, equipped with a lock, is of common benefit to both parties and serves to prevent a nuisance.

4. Plaintiff is not entitled to the relief requested or to any other relief.

### Decree Nisi

And now, to wit, October 31, 1947, it is ordered, adjudged and decreed as follows:

1. Defendant will tender to plaintiff's counsel of record a key for the aforesaid gate, whereupon the bill in equity will be dismissed.

2. Plaintiff shall pay the costs of these proceedings.

The prothonotary is directed to enter this decree nisi and to give notice to the parties, or their counsel of record, of the entry of this decree, and, if no exceptions are filed within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.