**LAND O'LAKES CREAMERIES, Inc., et al. v. McNUTT, Federal Security Adm'r (NATIONAL CO-OP. MILK PRODUCERS' FEDERATION et al., Interveners).**

No. 12115.

Circuit Court of Appeals, Eighth Circuit.

Jan. 21, 1943.

654

Charles W. Wilson, of Washington, D. C., and W. E. Rumble, of St. Paul, Minn. (M. J. Doherty, of St. Paul, Minn., John B. Gage, of Kansas City, Mo., Donald W. Kane, of Washington, D. C., Addison M. Parker and Addison M. Parker, Jr., both of Des Moines, Iowa, Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., and Gage, Hillix, Hodges & Cowherd, of Kansas City, Mo., on the brief), for petitioners and interveners.

Louis B. Schwartz, Sp. Asst. to Atty. Gen. (Wendell Berge, Asst. Atty. Gen., and James W. Knapp, Atty., Department of Justice, and Sidney Zagri, Atty., Federal Security Agency, both of Washington, D. C., on the brief), for respondent.

Phillip Tocker, of Fort Worth, Tex., for National Cotton Council of America, amicus curiae in support of respondent.

Before STONE, SANBORN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the respondent[1] made on June 5, 1941, promulgating regulations fixing and establishing a definition and standard of identity for oleomargarine under the Federal Food, Drug, and Cosmetic Act of 1938. (§ 401, 52 Stat. 1046, 21 U.S.C.A. § 341; § 701, 52 Stat. 1055, 21 U.S.C.A. § 371; Reorganization Act of 1939, 53 Stat. 561, 5 U.S.C. Supp. V, § 133 et seq., [see note, 5 U.S.C.A. following § 132, concerning §§ 133–133r]; Reorganization Plan No. IV,[2] 5 Fed.Reg. 2421, 54 Stat. 1234, 5 U.S.C.A. following section 133t; 54 Stat. 231, 5 U. S.C.A. § 133u.)

The petitioners are cooperative corporations engaged in the marketing of butter and milk. The interveners are similar organizations engaged in furthering the interests of the dairy and butter industry. Since the petitioners and the interveners seek the same relief, they will be collectively referred to as "petitioners."

The petitioners assert that the order is invalid because it contravenes §§ 403(c) and 402(b) (4) of the Federal Food, Drug, and Cosmetic Act, §§ 343(c) and 342(b) (4), 21 U.S.C.A., which sections relate to the misbranding and to the adulteration of foods, and because there is no substantial evidentiary support for the respondent's determination that his order promotes honesty and fair dealing in the interest of consumers.

By a motion to dismiss the petition and the intervening petitions, the respondent

[1] The order was made by Watson B. Miller, as Acting Administrator of the Federal Security Agency, but, for convenience, will be referred to as though made by the respondent.

[2] Sec. 12 of Reorganization Plan No. IV transferred the administration of the Federal Food, Drug, and Cosmetic Act from the Secretary of Agriculture to the Federal Security Administrator.

has challenged the right of the petitioners to maintain this proceeding.

The questions to be determined are, broadly, whether the petitioners can invoke a review by this Court of the challenged order, and whether, if they are entitled to a review, the order is invalid for any of the reasons advanced by them.

Section 401 of the Federal Food, Drug, and Cosmetic Act provides that: "Whenever in the judgment of the Secretary [Administrator] such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container * * *.[3] In prescribing a definition and standard of identity for any food or class of foods in which optional ingredients are permitted, the Secretary [Administrator] shall, for the purpose of promoting honesty and fair dealing in the interests of consumers, designate the optional ingredients which shall be named on the label. * * *"

Section 701(e) of the Act provides that the Administrator "shall hold a public hearing upon a proposal to issue, amend, or repeal any regulation contemplated by" Section 401 of the Act; that at the hearing "any interested person" may be heard in person or by his representative; that, as soon as practicable after completion of the hearing, the Administrator shall by order make public his action or his decision not to act; and that his order shall be based only on substantial evidence of record at the hearing and shall set forth the detailed findings of fact on which the order is based.

Subsection (f) of Section 701 of the Act provides that "in a case of actual controversy as to the validity of any order" under subsection (e) of Section 701, "any person who will be adversely affected by such order if placed in effect" may, within ninety days after its issuance, file a petition with the Circuit Court of Appeals of the United States for the Circuit in which he resides or has his principal place of business "for a judicial review of such order;" that "the court shall have jurisdiction to affirm the order, or to set it aside in whole or in part, temporarily or permanently;" that "if the order of the Secretary [Administrator] refuses to issue, amend, or repeal a regulation and such order is not in accordance with law the court shall by its judgment order the Secretary [Administrator] to take action, with respect to such regulation, in accordance with law;" and that "the findings of the Secretary [Administrator] as to the facts, if supported by substantial evidence, shall be conclusive." Subsection (f) of Section 701 also provides that "the remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law."

The challenged order establishing a definition and standard of identity for oleomargarine was made after a hearing held upon due notice. The order contains detailed findings of fact and a determination that the standard "would promote honesty and fair dealing in the interest of consumers." The standard of identity established by the order states that oleomargarine is a plastic food prepared from animal fat or vegetable fat or oil, or a combination of both animal and vegetable fat, which is intimately mixed with milk ingredients. The standard includes as optional ingredients:

"(5)   Artificial coloring.

"(6)   Sodium benzoate, or benzoic acid, or a combination of these, in a quantity not to exceed 0.1 per cent of the weight of the finished product.

"(7)   Vitamin A * * * in such quantity that the finished oleomargarine contains not less than 9,000 United States Pharmacopoeia Units of Vitamin A per pound.

"(8)   The artificial flavoring diacetyl added as such, or as starter distillate, or produced during the preparation of the product as a result of the addition of citric acid or harmless citrates."

The standard requires that if artificial coloring or diacetyl, or benzoate of soda, or Vitamin A is used in oleomargarine, the label must disclose the fact.

The findings of fact of the respondent show that diacetyl is an artificial flavoring produced in oleomargarine by the action of certain harmless bacterial starters, and that diacetyl is also added to oleomargarine as an additional ingredient to enhance

---

[3] Certain foods, including butter, are not subject to the authority granted the Administrator to establish definitions and standards of identity.

the flavor of the finished product; that some consumers use oleomargarine for the same purposes as butter, and that the addition of 9,000 Units of Vitamin A per pound will give a Vitamin A content comparable to that of butter; that present conditions of retail distribution of oleomargarine do not afford adequate refrigeration for the product, and that sodium benzoate or benzoic acid, or both, are sometimes added to aid in retarding deterioration; and that butter, salt and artificial flavoring are sometimes used in the preparation of oleomargarine.

Our examination of the evidence adduced at the hearing before the respondent convinces us that all of the findings of fact upon which the respondent's order is based are sustained by substantial evidence. The evidence at the hearing was directed at ascertaining what ingredients had been and were being used in the preparation of oleomargarine and what ingredients consumers understood were contained in that product. The testimony amounted to a quantitative and qualitative analysis of that food product. The only substantial dispute which arose during the hearing was as to the propriety of the use of diacetyl as an optional ingredient of oleomargarine. Henry A. Lepper, a chemist in the Food and Drug Administration of the Federal Security Agency, who, for many years, had been concerned with regulatory problems in the enforcement of the Federal food laws and in the analysis of foods, testified, in substance, that in his opinion the permitted use of diacetyl in the manufacture of oleomargarine was not in the interest of honesty and fair dealing, because diacetyl produces or enhances the butter flavor and would lead uninformed consumers to believe that there were substantial quantities of butter present in oleomargarine. Mr. Lepper had previously, at the hearing, testified that the standard of identity proposed by the respondent in his notice of hearing "would promote honesty and fair dealing in the interests of consumers because it would fulfill the consumers' conception of what the product should be, and would assure the consumer a minimum of fat commensurate with that understanding;" and that "it would also assure the consumer that dairy products in the nature of skim milk or reconstituted milk had been used in its preparation, because the consumer generally believes that to be a fact." The

proposed standard of identity to which Mr. Lepper was then referring was substantially similar to that finally adopted by the respondent, except that diacetyl was not an optional ingredient in the standard originally proposed, nor was benzoate of soda or benzoic acid. Mr. Lepper testified that bacterial starters are generally used to promote the growth of lactic acid bacteria in the milk ingredient; that in that way the best flavor is developed, a "flavor that is associated with dairy products," and that consumer understanding is that dairy products are present in oleomargarine, and this flavor is developed by the bacteria that ordinarily develop flavor in dairy products. Mr. Lepper conceded in his testimony that, without the addition of diacetyl, oleomargarine might have the same butter flavor, depending upon how rich the milk ingredient used was in the properties which give flavor. It was clearly Mr. Lepper's opinion, however, that diacetyl, if added as an ingredient, would be used to enhance the butter flavor of oleomargarine, and would or might create the impression that substantial quantities of butter had been incorporated, and would therefore make the product appear to be better or of greater value than it was; and that he did not believe that "fundamental deceptions, arising out of appearance or flavor, were correctable by any form of label statement." There was testimony on behalf of the oleomargarine industry that the only purpose of the addition of diacetyl was to overcome the deficiency of citrates in some of the milk ingredient used in the manufacture of oleomargarine and to give to the consumer a product which would, so far as possible, have a uniform flavor.

A witness who testified in the interests of the consumers of oleomargarine, expressed the opinion that a preservative such as benzoate of soda or benzoic acid might be used to conceal an unsanitary or inferior product. There was other evidence that such a product could not be improved by the addition of these preservatives, and that the only purpose that they served was to enable the consumer to obtain the product in substantially the same condition as when it left the producer's hands.

None of the petitioners appeared at the hearing except the National Cooperative Milk Producers' Federation, which, perhaps, may be regarded as having repre-

sented the interests of the other petitioners and of the butter industry generally. The Federation introduced no evidence, took no part in the examination of witnesses produced by the respondent and by the oleomargarine industry, made no suggestions of any kind at the hearing as to what would constitute a proper standard of identity for oleomargarine, and was entirely inactive until the hearing was over, when it filed exceptions (with a supporting brief) to the findings and order which the respondent after the hearing and on April 14, 1941, gave notice that he proposed to make and which he finally did make on June 5, 1941. The exceptions were directed against the inclusion of sodium benzoate, Vitamin A, diacetyl (starter distillate, citric acid or citrates) as optional ingredients, and against the respondent's determination that his order would promote honesty and fair dealing in the interest of consumers. The Federation in its brief, submitted with its exceptions, asserted that, "since the product, oleomargarine lends itself to fraud and deception by virtue of the very fact that the consumer has come to associate dairy products with its flavor, nothing which permits this substitute product to more nearly simulate the dairy product butter will do other, in our judgment, than aggravate its fraudulent and deceptive sale." The National Dairy Union also filed with the respondent exceptions to the proposed order, with supporting brief.

The respondent contends that the petitioners are not persons "adversely affected" by the standard of identity for oleomargarine, and that they have no "actual controversy" within the meaning of § 701(f)(1) of the Act. The respondent points out that the provisions of his order operate solely upon the oleomargarine industry; that it does not exempt that industry from compliance with all state and federal laws affecting its product; that it confers upon the industry no privileges which did not exist prior to the adoption of the standard, and that the order cannot adversely affect the butter industry or those engaged in it, since their competitive position is not affected by the order. The respondent also contends that, in so far as the petitioners assert that the regulation fixing the standard is not in the interest of consumers, they urge a grievance which is not their own. The respondent relies upon Interstate Commerce Commission v. Chica-go, R. I. & Pac. Ry. Co., 218 U.S. 88, 109, 30 S.Ct. 651, 54 L.Ed. 946; L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 304, 306, 61 S.Ct. 254, 85 L.Ed. 198; Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108; Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 139, 140, 59 S.Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes, 302 U.S. 464, 480–485, 58 S.Ct. 300, 82 L.Ed. 374; Moffat Tunnel League v. United States, 289 U.S. 113, 119, 53 S. Ct. 543, 77 L.Ed. 1069; Alexander Sprunt & Son, Inc. v. United States, 281 U.S. 249, 255, 256, 50 S.Ct. 315, 74 L.Ed. 832; Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 148, 149, 44 S.Ct. 72, 68 L.Ed. 216; Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078; Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274, 66 L.Ed. 499; and other cases. It is the respondent's opinion that Congress intended that the right to a review of such an order as the one under consideration should be confined to persons directly affected by the order, namely, the members of the industry concerned, consumers directly affected, and possibly suppliers of ingredients which were excluded by the standard set up. See A. E. Staley Mfg. Co. v. Secretary of Agriculture, 7 Cir., 120 F.2d 258, 259–266.

The petitioners argue, in effect, that the order licenses the oleomargarine industry to engage in unfair and unlawful competition with them, that they have a large stake in the butter industry, and that they are, therefore, persons "adversely affected" by the order. They rely upon such cases as Alton Railroad Co. v. United States, 315 U.S. 15, 18–20, 62 S.Ct. 432, 86 L.Ed. 586; Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 476, 477, and 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037; Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382, 390, 52 S.Ct. 440, 76 L.Ed. 808. The petitioners also contend that they are "interested persons" who were represented at the hearing before the respondent, and are to be regarded as parties to that proceeding against whom an adverse order has been entered.

The producers of butter and the producers of oleomargarine have been for many years competing in the same field, if not exactly upon the same economic plane. The petitioners believe that the

658

order of the respondent, which standardizes the use of optional ingredients in oleomargarine which they think it should not be permitted to contain, impairs the petitioners' competitive position, adversely affects them, and is invalid.

■ It seems to us that the controversy between the petitioners and the respondent is an actual controversy over the lawfulness of the respondent's order. Congress did not see fit to limit the right of review to those directly affected by such an order—as it might readily have done—and the case of Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 476-477, 642, 60 S.Ct. 693, 84 L.Ed. 869, lends substantial support to the petitioners' argument respecting their right to a review.

We have, with some misgivings, concluded to resolve our doubts with respect to our jurisdiction to review the respondent's order in favor of the petitioners.

■ The judgment or determination of the respondent that the order will promote honesty and fair dealing in the interest of consumers cannot, we think, be disturbed by this Court. "His right to make the judgment is of course equivalent to a discretionary power to act, which cannot be judicially reviewed. United States v. George S. Bush & Co., Inc., 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259." Twin City Milk Producers Ass'n v. McNutt, 8 Cir., 122 F.2d 564, 566. Compare, Quaker Oats Co. v. Federal Security Administrator, 7 Cir., 129 F.2d 76, 81, certiorari granted, 317 U.S. ——, 63 S.Ct. 158, 87 L.Ed. ——. And, if the respondent's determination in that regard were subject to review by this Court, we would still be of the opinion that it would have to stand. We have already shown that the standard of identity adopted was substantially the standard of identity proposed in the respondent's notice of hearing, with the exception of the optional ingredients diacetyl and benzoate of soda; that there was substantial evidence that the standard of identity proposed would promote honesty and fair dealing in the interest of consumers; and that the only real disagreement between the witnesses at the hearing was as to the propriety of the use of diacetyl as an optional ingredient. It was for the respondent to resolve this conflict in the evidence, and to determine whether diacetyl should be an optional ingredient and whether in his judgment the standard of

identity with the inclusion of this ingredient would promote honesty and fair dealing in the interest of consumers. His conclusions in these regards are, we think, neither arbitrary nor capricious, and are, therefore, binding upon this Court.

That leaves for consideration the questions of whether the order violates the misbranding provision and the adulteration provision of the Act.

Section 403(c) of the Act, 21 U.S.C.A. § 343(c), provides that a food shall be deemed misbranded "if it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated."

The petitioners, in their brief assert as follows: "It is quite obvious that the testimony upon which the respondent's order is supposedly based discloses that these various permitted optional ingredients are used for the sole purpose of simulating the genuine product butter. It is the duty under the law of respondent to require manufacturers of oleomargarine if they are to use these ingredients in their product to label their product in accordance with the plain mandate of Congress, namely, with the word 'imitation' together with the name of the product (butter) imitated. This the respondent did not do. His order is repugnant to the provisions of Sec. 403(c) of the Act and consequently void."

The answer of the respondent is that oleomargarine containing the optional ingredients referred to in the order, is not "an imitation" of butter within the meaning of § 403(c); that the mere resemblance or similarity of one food to another is insufficient to make one an "imitation" of the other; and that what § 403(c) is directed at is preventing a spurious food being passed off as genuine. The respondent also contends that, even if some oleomargarine conforming to the standard of identity might be sold under circumstances which might possibly make it an "imitation" of butter under § 403(c), that fact would not vitiate the standard, since the provisions of § 401, relating to the establishment of standards of identity, and the provisions of § 403(c) requiring that imitations of foods be labelled as such, are not conflicting and are independent of each other.

■■ Oleomargarine is a well known food product with an identity of its own,

and there is nothing in the record before us, with the possible exception of the expert opinion expressed by Mr. Lepper (with which the respondent did not agree) to indicate that oleomargarine has been, or is likely to be, passed off as butter; that it is, or is likely to be, used as a deceptive imitation of butter; or that labelling requirements will not effectually protect consumers against fraud. The respondent, we think, has convincingly demonstrated in his brief that, in view of federal and state restrictions imposed upon the sale of oleomargarine, it is improbable that it could, as a practical matter, be successfully passed off as butter. But if § 403(c) requires that oleomargarine containing the optional ingredients specified in the standard be labelled "imitation butter," it is our opinion that the respondent's order cannot be invalidated for that reason, because we regard § 403(c) as independent of § 401. If § 403(c) imposed the duty upon the respondent to require all oleomargarine containing the ingredients designated in the standard as optional, to be labelled "imitation butter," that duty existed both before and after the order was made, since the order does not impair, or purport to impair, the effectiveness of § 403(c). The order establishes a definition of a food product, and is not a license, to those who produce it, to violate any state or federal labelling requirements.

Sec. 402(b) (4) of the Act, 21 U.S.C.A. § 342(b) (4), provides that a food shall be deemed to be adulterated "if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is." In order to determine whether anything has been added to a food which makes it appear "better or of greater value than it is," it is necessary to know first of all what the food is. The purpose of the respondent's order was to ascertain the ingredients of oleomargarine and to define and identify it. Under the definition which he adopted, oleomargarine is a food which contains the ingredients and optional ingredients specified in the definition and standard of identity. It is not conceivable to us that we could rule that the use of one or more of the optional ingredients would make oleomargarine an adulterated food, and at the same time be of the opinion that the standard of identity established by the order was supported by valid findings of fact and sustained by substantial evidence. We think there is no conflict between the order of the respondent and § 402(b) (4) of the Act.

■ What the petitioners are really objecting to is the inclusion by the respondent, in the standard of identity established, of optional ingredients which they contend should have been excluded by him. They should have made their fight for these exclusions before the respondent, and not before this Court. Upon the evidence adduced at the hearing, we are convinced that the respondent had the power to make the order which is challenged. Whether the order is right or wrong is no concern of this Court, for it cannot substitute its judgment for that of the respondent. See and compare, Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L. Ed. 1251; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 580, 581, 60 S.Ct. 1021, 84 L.Ed. 1368; National Labor Relations Board v. Waterman Steamship Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704; National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; Eagle-Picher Mining & Smelting Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 903, 907; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 342, 60 S.Ct. 918, 84 L.Ed. 1226.

The motion of the respondent to dismiss the original and intervening petitions is denied.

The order under review is affirmed.