**ROSENBLUM et al.**

v.

**FEDERAL TRADE COMMISSION.**

**Docket 21959.**

United States Court of Appeals Second Circuit.

Submitted May 26, 1954.

Decided July 8, 1954.

Copal Mintz, New York City, for petitioners.

Earl W. Kintner, General Counsel, Federal Trade Commission, Washington, D. C., for respondent.

Before CHASE, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

PER CURIAM.

Motion granted.

CLARK, Circuit Judge (dissenting).

My brothers have voted to grant without discussion the joint motion of petitioners, doing business as Modern Manner Clothes, and the Federal Trade Commission asking us to vacate a final decree entered by us in 1951 enforcing a Commission order and to enter in lieu thereof a decree dismissing the entire proceeding. The order which we enforced was one of a considerable series ordering vendors and distributors of merchandise, books, and the like to cease and desist from using the word "free" with reference to an article which was not in fact given as a gift or gratuity. Here the interdicted advertising of this mail order house offered to saleswomen, in addition to their regular commissions, "free bonus dresses" upon selling from 12 to 30 dresses, the larger numbers yielding a higher value "free" dress. Our decision appears in Rosenblum v. F. T. C., 2 Cir., 192 F.2d 392, with denial of certiorari by the Supreme Court reported in 343 U.S. 905, 72 S.Ct. 635, ₃6 L.Ed. 1323. So clear was the law at that time that

we contented ourselves with affirming merely on the authority of three cited cases.

One of the cases we cited had been particularly important in the development of the law; it was the well-known case of F. T. C. v. Standard Education Soc., Nov. 8, 1937, 302 U.S. 112, 58 S.Ct. 113, 115, 82 L.Ed. 141, reversing our decision in 2 Cir., 86 F.2d 692. There a unanimous Court spoke of the "practice of promising free books where no free books were intended to be given" thus: "To fail to prohibit such evil practices would be to elevate deception in business and to give to it the standing and dignity of truth." It also said: "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. * * * Laws are made to protect the trusting as well as the suspicious." 302 U.S. 116, 58 S.Ct. 115.

The basis upon which the Commission took its present action of vacating its own order of December 19, 1950, and dismissing its original complaint in its entirety, as well as asking us to do likewise, is that it has changed its position with respect to the use, in advertising, of the word "free." And it refers us to another case not a part of this record, In re Walter J. Black, Inc., FTC, Docket 5571, Sept. 11, 1953, wherein the use of the word "free" was held permissible when the conditions for receipt of the "free" article were at the same time explained fully or in effect to the Commission's satisfaction. This change in policy seems rather clearly due to a change in personnel of the Commission; see the dissent herein and in the Black case of Commissioner and former Chairman Mead. And this appears to be the view of business.[1] A like metamorphosis appears to be taking place with respect to other "quasi-judicial" agencies, and other

cases of this nature are clearly indicated. This involves a development of administrative law perhaps too little appreciated by writers and experts in the field; it demonstrates how the impact of a regulatory law upon the regulated business can be completely changed or removed with no change whatsoever in the fundamental law or statute.

So scholars may perhaps find, now that this case points the way, considerable uncharted territory, including such matters as the meaning of Acts of Congress or of statutory expressions ("secondary boycotts" and "union security clauses," for example), where agency interpretation, to which deference must be paid under well settled law, as stated in, e. g., Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Niagara Falls Power Co. v. Federal Power Commission, 2 Cir., 137 F.2d 787, 792, certiorari denied 320 U.S. 792, 815, 64 S.Ct. 206, 88 L.Ed. 477; cf. Social Security Board v. Nierotko, 327 U.S. 358, 368, 66 S.Ct. 637, 90 L.Ed. 718, 162 A.L.R. 1445, has in fact proven persuasively decisive. Is appellate self-reversal here to follow as a matter of course when a new agency personnel reinterprets the law? At any rate surely the issues thus opened up are too important in both their immediate and their potential implications to be settled by a purely pro forma ruling by us at the behest of regulator and regulatee acting in concert and without representation of other possible interests.

So far as these developments are in actuality (whatever their form) definite changes in governmental policy permissible under the governing Congressional Acts, they must be accepted by the courts which constitutionally have less control over policy than even the executive department. But judicial action, in administrative proceedings as elsewhere, should be properly deliberative, on consideration of an adequate record. And,

---

1. See Business Week, May 15, 1954, p. 126, subtit. "FTC Clears General Foods," stating that "[t]he Republican FTC has been backing away" from a doctrine established, "[w]hile the Demo-crats were running the Federal Trade Commission," and referring to "[t]he dissent of James M. Mead, former chairman under the Democrats," as showing the view of "the old commission."

**340**

since it is our decree which we are now asked to nullify as though it had never existed, we are willy-nilly involved, at least to the extent that we may disappoint or deny out of hand reasonable rights or expectations based upon what we have done in good faith earlier. It seems to me that procedurally the least we must require before entering upon a course looking to such reversals as are now called for is a full record—of essentially the same nature as we do require on original proceedings—which shall show (1) an opportunity for the presentation of objections (with resulting right to petition for review) by anyone, competitor or consumer, who has been induced to rely upon the previously stated law, see Reade v. Ewing, 2 Cir., 205 F.2d 630; Land O'Lakes Creameries v. McNutt, 8 Cir., 132 F.2d 653; F. C. C. v. Sanders Bros. Radio Station, 309 U.S. 470, 476–477, 60 S.Ct. 693, 84 L.Ed. 869, 1037, and (2) a final order which shall not be retroactive, attempting to wipe out what has actually occurred in the past, but shall operate only prospectively from a definitely stated time. Only when we have such a record are we properly brought to the substantive issues involved.

In default of such a record here, it is premature to attempt a definitive discussion of such substantive issues. But to avoid possible misunderstanding of my position, I append certain suggestions. Since the earlier administrative interpretation upon which we rested our enforcement decree not only has "seasoned or broadened into a settled administrative practice," Davies Warehouse Co. v. Bowles, 321 U.S. 144, 156, 64 S.Ct. 474, 481, 88 L.Ed. 635, but has also been approved and adopted by the Supreme Court in F. T. C. v. Standard Education

Soc., supra, the Commission should have the burden of demonstrating on a convincing new record that its changed view is a permissible, rational,[2] alternative interpretation of the law. Niagara Falls Power Co. v. Federal Power Commission, supra; cf. Board of Governors of Federal Reserve System v. Agnew, 329 U.S. 441, 447, 451, 67 S.Ct. 411, 91 L.Ed. 408. Although administrative interpretations are unquestionably entitled to great weight, they do not, unless reasonable, bind the courts which have a duty to exercise their own powers of decision, limited though those may be in this area of the law. Social Security Board v. Nierotko, supra, 327 U.S. at pages 368, 369, 66 S.Ct. 637. Hence we should not expunge our earlier decree merely because the Commission, as now constituted, does not happen to like it. If administrative agencies may turn court enforcing orders on or off according to their shifting whims, then courts are abdicating the functions, however limited, actually assigned to them by Congress. We may not usurp administrative authority, but neither may we abdicate the judicial responsibility we have. Hecht Co. v. Bowles, 321 U.S. 321, 330, 331, 64 S.Ct. 587, 88 L.Ed. 754. It is true that the Commission's new policy may lead to inequalities as regards those against whom present enforcement orders are outstanding; but these, except in so far as they stem from a permissible new rational construction of the statute, will be ascribable to arbitrary agency, rather than judicial, action.

Since such basis for and safeguards of judicial self-reversal are here left entirely lacking, I think the joint motion should be denied, and accordingly respectfully dissent.

2. Thus some conceivably might find unconvincing the Commission's present reliance on the old case of Connery v. Brooke, 73 Pa. 80, deciding that the issue whether a gate which had to be opened and closed actually obstructed "free" use of a passageway was one of fact for the jury. See In re Walter J. Black, Inc., supra, FTC, Docket 5571, Sept. 11, 1953, as quoted in 22 U. S. L. Week 2123, 2124.